IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN KODISH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 05 C 4620 |
| v. | ) |
| | ) Magistrate Judge Morton Denlow |
| OAKBROOK TERRACE FIRE | ) |
| PROTECTION DISTRICT, | ) |
| GREGORY J. SEBESTA, DONALD | ) |
| VENTURA, ANDY SARALLO and | ) |
| JOE DRAGOVICH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian Kodish ("Kodish" or "Plaintiff") moves this Court pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel Defendants Oakbrook Terrace Fire Protection District ("Fire District"), Gregory J. Sebesta ("Sebesta"), Donald Ventura ("Ventura"), Andy Sarallo ("Sarallo"), and Joe Dragovich ("Dragovich") (collectively "Defendants") to produce the audiotape of the Fire District board meeting closed session held by the Defendants on August 11, 2004. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion to compel the production of the audiotape.

### I. BACKGROUND FACTS

Plaintiff was terminated from his position as a firefighter/paramedic by Oakbrook Terrace on August 12, 2004. Sebesta is the Chief of the Fire District. Ventura, Sarallo and Dragovich are the Fire District's trustees. Plaintiff brought this action alleging that

Defendants intentionally deprived him of his constitutionally protected right to due process of law in violation of 42 U.S.C. §1983, and that the Defendants wrongfully terminated him and defamed him.

Plaintiff was hired as a firefighter/paramedic by the Fire District on June 2, 2003. In late December 2003, Plaintiff suffered a knee injury while working for the Fire District. Plaintiff's injury kept him off work starting around March 24, 2004. Plaintiff underwent surgery on May 7, 2004, and was not medically released to full duty until July 23, 2004. On August 2, 2004, the Illinois Public Risk Fund ("IPRF") informed Plaintiff that the Fire District's workers compensation carrier/administrator denied paying his medical bills because it did not believe he suffered a work injury.

On August 9, 2004, Plaintiff took a scheduled workday off in order to meet with an attorney to acquire representation for a workers compensation claim. Defendants held a closed session meeting on August 11, 2004 with its attorney, where they discussed the decision to terminate Sebesta. Plaintiff returned to work on August 12, 2004, and Sebesta told him that he did not earn the day off for August 9, and that the Fire District made the decision to terminate him. Plaintiff claims that his termination was wrongful.

In the course of discovery, Plaintiff submitted a request to produce to Defendants, which included a request for audiotapes. Defendants did not initially identify any audiotape in its response. During the deposition of Dragovich, Plaintiff learned that the August 11, 2004 closed session meeting was audiotaped. Plaintiff renewed his request for the audiotape. The Fire District has refused to produce the audiotape, contending that this information is

privileged under the open meetings provisions of the Illinois Open Meetings Act ("the Act"), 5 ILL.COMP.STAT.ANN.120/1 (2006). Furthermore, the Fire District claims that the discussions are protected from disclosure by the attorney-client privilege. Plaintiff now seeks to compel the Defendants to produce the audiotape recorded during the August 11, 2004 closed session meeting.

## II.  LEGAL STANDARD FOR A MOTION TO COMPEL DISCOVERY

A party may file a motion to compel discovery under Rule 37 of the Federal Rules of Civil Procedure where another party fails to respond to a discovery request or where the party's response is evasive or incomplete. Fed. R. Civ. P. 37(a)(2)-(3). The Federal Rules of Civil Procedure provide a court with broad discretion in resolving discovery disputes. *Meyer v. Southern Pacific Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001). A motion to compel discovery is granted or denied at the discretion of the trial court. *Id.* In ruling on motions to compel discovery, "courts have consistently adopted a liberal interpretation of the discovery rules." *Wilstein v. San Tropia Condominium Master Association*, 189 F.R.D. 371, 375 (N.D. Ill. 1999).

Under Rule 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. *Rubin v. Islamic Republican of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004). Thus, the scope of

discovery should be broad in order to aid in the search for truth. *Tice v. American Airlines, Inc.,* 192 F.R.D. 270, 272 (N.D. Ill. 2000). Courts commonly look unfavorably upon significant restrictions placed upon the discovery process. *Rubin*, 349 F. Supp. 2d at 1111. The burden rests upon the objecting party to show why a particular discovery request is improper. *Id.*

### III.  DISCUSSION

In its consideration of Plaintiff's motion, the Court must decide the following issues: (1) whether federal or state law governs the privilege questions; (2) whether the Act protects discussions held in a closed session meeting; and (3) whether the attorney-client privilege protects discussions held in a closed session meeting.

**A.     FEDERAL COMMON LAW GOVERNS THE PRIVILEGES ASSERTED**

Federal Rule of Evidence 501 states that "[t]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State law." Fed. R. Evid. 501.  However, in cases where the principal claim in federal court arises under federal law, with pendent jurisdiction over a state claim, the federal common law of privileges apply. *Memorial Hospital For McHenry County v. Shadur*, 664 F.2d 1058, 1060 (7th Cir. 1981). In *Memorial Hospital*, the plaintiff alleged violations of both federal and state antitrust laws. *Id*. In declining to

apply the Illinois privilege provided under the Illinois Medical Studies Act, the Seventh Circuit reasoned that the principal claim arose under federal law and "because the state law does not supply the rule of decision as to this claim, the district court was not required to apply state law in determining whether the material sought . . . is privileged." *Id.* at 1061. The *Memorial Hosptial* court held that "the question of whether the privilege asserted . . . should be recognized" is governed by federal common law. *Id.* Similarly, the court in *Doe v. Oberweis Dairy*, No. 03 C 4774, 2004 WL 1146712, at \*2 (N.D. Ill. May 21, 2004), stated that "federal common law applies in cases based upon a federal cause of action even if the complaint states a supplemental state law claim."

The principal claim in this case is brought pursuant to 42 U.S.C. § 1983 of the Civil Rights Act of 1964. Plaintiff brings his wrongful termination and defamation claims under the doctrine of pendent jurisdiction. Because the principal claim in this case arises under federal law, this Court is not required to apply state law privileges. Thus, the Court must look to privileges recognized by federal common law.

**B.   THE OPEN MEETINGS PRIVILEGE DOES NOT APPLY UNDER FEDERAL COMMON LAW**

In determining privileges pursuant to federal common law, the Court must first inquire whether or not there is an existing privilege. *Wilstein*, 189 F.R.D. at 376. If so, that privilege is applied. *Id.* If not, the Court must then determine whether the federal common law should be expanded to include an asserted state law privilege. *Id.* Thus, the first issue is whether a federal common law privilege exempts closed-door meetings from discovery. This

Court finds no such federal common law.

Therefore, the Court must next consider whether the federal common law of privileges should be expanded to encompass the asserted state privilege. In *Jaffe v. Redmond*, 518 U.S. 1, 8 (1996), the Supreme Court set forth the principles a court must consider in determining when "Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting 'common law privileges . . . in the light of reason and experience.'" The Court noted that Rule 501 "did not freeze the law governing the privileges . . . at a particular point in history, but rather directed federal courts to 'continue the evolutionary development of testimonial privileges.'" *Id.* at 9. The Court started with the basic rule that "there is a general duty to give what testimony one is capable of giving, and that any exemptions . . . are distinctly exceptional" and "disfavored." *Id.* The Court then stated that for any privilege to be added to the federal common law, the privilege must "promote . . . sufficiently important interests to outweigh the need for probative evidence." *Id.* The analysis must be made on a case-by-case basis, and take into account both the public and private interests that the privilege serves, as well as the evidentiary benefit that would result if the privilege was denied. *Id.* at 8-11.

Further, in determining whether to recognize a state law privilege, the Court must keep in mind that a "strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Memorial Hosp.*, 446 F.2d at 1061 (quoting *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y.1976)). In *Memorial Hopital*,

6

the Seventh Circuit relied upon an analysis similar to that of the Supreme Court in *Jaffe* to determine whether a state law privilege should be recognized under Federal Rule of Evidence 501:

> First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed.  Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises.  The court should 'weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.'

*Memorial Hosp.*, 664 F.2d at 1061-62 (citations omitted).

In this case, there is a substantial need for the disclosure of relevant evidence.  The Court recognizes that the Act expressly provides that "unless the public body has made a determination that the verbatim recording no longer requires confidential treatment or otherwise consents to disclosure, the recording shall not be open for public inspection *or subject to discovery in any judicial proceeding* other than one brought to enforce this Act."  5 ILCS 120/2.06 (e) (emphasis added).  However, in balancing the need for truth against the privilege asserted, the Court finds that the privilege should not prevent disclosure necessary to the legal inquiry.

Here, plaintiff's principal claim is a federal civil rights claim. In *Hinsdale v. City of Liberal*, *Kansas*, 961 F. Supp. 1490, 1495 (D. Kan. 1997), *aff'd*, 981 F.Supp. 1378 (D. Kan. 1997), the court declined to recognize the Kansas Open Meetings Act in a federal civil rights case. The court stated that "caution should be especially taken in recognizing a privilege in a federal civil rights action, where any assertion of privilege must overcome the fundamental importance of a law meant to protect citizens from unconstitutional state action." *Id.* (citing *Mason v. Stock*, 869 F. Supp. 828, 833 (D. Kan. 1994)). The court reasoned that "if state law controlled, the state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims." *Id.*

In the instant case, in order for Plaintiff to pursue his § 1983 civil rights claim, he must attempt to ascertain the motive and basis for the Fire District's decision to terminate him. The audiotape recorded during the August 11, 2004 closed session meeting will likely aid in uncovering the facts relied upon by the Board of Trustees to terminate Plaintiff. At the August 11, 2004 meeting, the Defendants discussed whether to terminate Plaintiff, and the day after the meeting Plaintiff learned of the Fire District's decision to terminate him. Furthermore, there is no compelling policy interest to justify protecting all communications in the closed session meeting. As discussed below, the attorney-client privilege provides adequate protection. The interests served by the open meeting privilege are overcome by the need for probative evidence and are adequately protected by the attorney-client privilege. Thus, this Court refuses to extend federal common law to encompass the open meetings

privilege.

## C. THE ATTORNEY-CLIENT PRIVILEGE LIMITS THE DISCOVERY OF THE AUDIOTAPE

Federal common law recognizes the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id*. "The privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390. The privilege recognizes that sound legal advice depends upon the lawyer's being fully informed by the client. *Id.* at 389.

The Seventh Circuit has "long embraced the articulation of the attorney-client privilege first set forth by Dean Wigmore" in 1904. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). The essential general principles governing the privilege are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev. 1961).

The party claiming the privilege bears the burden of proving all of its essential elements. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). "Since the privilege has the effect of withholding relevant information from the fact finder, it applies only where

9

necessary to achieve its purpose." *Fisher v. United States*, 425 U.S.391, 403 (1976). Thus, "a blanket claim of privilege that does not specify what information is protected will not suffice." *United States v. White,* 970 F.2d 328, 334 (7th Cir. 1992). Therefore, the Court must decide to what extent the attorney-client privilege protects from discovery the statements made by board members during the closed session meeting with their attorney present.

### 1. Portions of the Audiotape Pertaining to Factual Information Underlying Plaintiff's Claim is Not Privileged Under the Attorney-Client Privilege.

The attorney-client privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. *Upjohn*, 449 U.S. at 395-396. The *Upjohn* court stated:

> A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id.* (quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F.Supp.830, 831 (E.D.Pa. 1962)).

In this case, Defendants' attorney attended the closed session meeting where they discussed the decision to terminate Plaintiff. However, the mere attendance of an attorney at a meeting does not render everything said or done at that meeting privileged. *Larson v. Harrington*, 11 F.Supp.2d 1198 (E.D. Cal. 1998). In *Larson* , the plaintiff moved to compel the deposition testimony of county board members regarding discussions held in closed session. The defendant objected to questions pertaining to the closed session on the ground

that the county counsel was present at the meetings and at each meeting "provided legal advice and counseling" to the board. *Id.* at 1200. The court found that even if confidential communications within the purview of the attorney-client privilege were made at the closed meetings, such communications would not "cloak the entire proceeding in secrecy." *Id.* at 1201. Discussions which did not implicate legal advice relating to pending or anticipated litigations are not privileged from discovery. *Id.*

In this case, the attorney-client privilege does not provide blanket protection from discovery. Although the Defendants' attorney was present at all times during the closed door meeting, his presence does not render all communications privileged. The discussions by members of the Fire District's board of trustees regarding Plaintiff's work history, Sebesta's reasons for moving to terminate Plaintiff, and Sebesta's discussion of what is desirable from an employee are examples of the type of information that is discoverable.

### 2. Portions of the Audiotape involving counsel's legal advice is privileged under the Attorney-Client Privilege.

Communications from an attorney to a client are privileged if the statements reveal, directly or indirectly, the substance of a confidential communication by the client. *Ohio Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 28 (N.D. Ill. 1980). The privilege extends to situations where an attorney is giving advice concerning the legal implications of conduct. *Wilstein*, 189 F.R.D. at 379. For communications at such meetings to be privileged, they must have related to the acquisition or rendition of professional legal services. *Id.* The party seeking to assert the privilege must show that the particular communication was part of a

request for advice or part of the advice, and that the communication was intended to be and was kept confidential. *Id.*

In *Great Plains Mutual Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993), the court denied the defendant's request for production of the minutes of a corporate board meeting when it found that the information sought by the plaintiff directly related "to legal advice rendered by its attorney in his capacity as legal advisor." While the court recognized that the presence of an attorney at a board meeting would not shield the entire meeting from disclosure, it was "clear from the minutes of the board meetings that the purpose of the conversations during the board meetings was to render legal advice." *Id*. Furthermore, both the plaintiff and its attorney understood that the purpose of the communications was to review and consider legal issues pertaining to pending litigation. *Id.* Thus, because the attorney was "acting in his capacity as an attorney during the relevant portions of the board meetings," and giving advice requiring "the skill and expertise of an attorney," these portions of the board meetings were protected from discovery. *Id.*

Similarly, "[a] privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation." *Weeks v. Samsung Heavy Ind. Co., Ltd.*, 1996 WL 341537 at *4 (N.D. Ill. June 20,1996). In *Weeks*, an executive employee summarized legal advice given by counsel regarding legal obligations and potential litigation risks regarding the suit at hand and relayed the information to his superior. *Weeks*, at *3.

The summary memo was held to be protected from discovery under the attorney-client privilege. *Id.* at *4.

In the instant case, conversations among the board members discussing their attorney's legal advice, and conversations among the board members and their attorney about potential litigation risk and legal strategy are privileged under the attorney-client privilege. Therefore, only the portions of the audiotape pertaining to factual information must be produced. Any information involving counsel's legal advice is privileged.

### 3. The Redacted Transcript of the Audiotape Shall be Produced to Plaintiff.

Defendants submitted a copy of the audiotape transcript to the Court for an *in camera* review, and highlighted the portions of the transcript which they believe are protected under the attorney-client privilege. The Court agrees with Defendants' selection of what material is protected under the attorney-client privilege. Therefore, the highlighted portions of the transcript shall be redacted by Defendants, and the rest of the transcript shall be produced to Plaintiff. With respect to the redacted portions, the transcript should identify the speaker. For example, on page 31, line 9, Mr. Ventura's name should be included in the transcript, but his statement should be redacted.

## IV.  CONCLUSION

For the foregoing reasons, the **Court grants in part and denies in part Plaintiff's motion to compel the audiotape of Oakbrook Terrace Fire Protection District closed session meeting on August 11, 2004.**

**SO ORDERED THIS 20TH DAY OF APRIL, 2006.**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

| | |
|---|---|
| Gregory J. Abbott | Stephen H. DiNolfo |
| LAW OFFICE OF | OTTOSEN BRITZ KELLY |
| GREGORY J. ABBOTT | COOPER & GILBERT, LTD. |
| 5205 S. Washington Street | 300 S. County Farm Rd., 3rd Floor |
| Downers Grove, IL  60515 | Wheaton, IL  60187 |
| | |
| Counsel for Plaintiff | Counsel for Defendant |