IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT, EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN KODISH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 C 4620 |
| v. | ) | |
| | ) | |
| OAKBROOK TERRACE FIRE PROTECTION | ) | |
| DISTRICT, GREGORY J. SEBESTA, DONALD | ) | JUDGE FILIP |
| VENTURA, ANDY SARALLO AND JOE | ) | |
| DRAGOVICH, | ) | |
| | ) | |
| Defendants. | ) | |

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS" MOTION FOR SUMMARY JUDGMENT</u>

NOW COMES, Plaintiff, BRIAN KODISH, and responds to defendants' motion for summary judgment, as follows:

<u>INTRODUCTION</u>

Plaintiff's response will show that defendants have failed to show that there are no genuine issues of material fact and they are clearly entitled to judgment as a matter of law.

<u>STANDARD FOR RULE 56 MOTION FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56   The inquiry to be made on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law.  <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

1

**ARGUMENT**

**I.      PLAINTIFF WAS TERMINATED IN VIOLATION OF 42 U.S.C. SECTION 1983**.

Defendant's memorandum of law argues that the Plaintiff does not have a claim for

violation of due process because Plaintiff 1) had no protectable interest in continued employment

because he was allegedly a "probationary" employee, 2) he was not deprived of a liberty interest,

and 3) he was not terminated, but rather resigned.  These will be addressed in order.

> **A)      Plaintiff's due process rights were violated in being terminated without a
> hearing because he had a protectable property interest in his position under
> the Fire Protection District Act, which entitled him to a hearing because he
> had held his position as a firefighter for longer than one year.**

>> 1)      Summary judgment is inappropriate because defendants are not clearly
>> entitled to judgment under the law because Kodish was entitled to a
>> hearing under the Fire Protection District Act.

>>> a)      *The Fire Protection District Act mandates that a firefighter who has held
>>> his position for at least one year is entitled to written charges and a
>>> hearing before he can be terminated.*

Plaintiff was denied his due process rights because he was terminated without written

charges and without a hearing despite having held his position for more than one year.  The Fire

Protection District Act, 70 ILCS 705/0.01 et seq. was in effect at the time of Plaintiff's

termination on August 11, 2004 and was applicable to the parties hereto.  Section 16.01 states

that "Every fire protection district having a fire department of which any officers or members are

full time, paid members shall be subject to Sections 16.01 to 16.18, inclusive."  OTFPD had full

time paid members, one of whom was the plaintiff, and is therefore subject to sections 16.01-

16.18.

Section 16.13b states, in pertinent part, as follows:

2

"… no officer or member of the fire department of any protection district who has held that position for one year shall be removed or discharged except for just cause, upon written charges specifying the complainant and the basis for the charges, and after a hearing on those charges before the board of fire commissioners, affording the officer or member an opportunity to be heard in his own defense. ..."

70 ILCS 705/16.13b.

When Kodish was terminated on August 11, 2004, he had held his position for approximately one year and 2 months. (Statement of Fact "SF" 2) Clearly, Section 16.13b mandates that prior to being discharged, Kodish was entitled to, among other rights, 1) the right to have any charges be in writing, identifying the complainant and the bases for the charges; and 2) the right to have a hearing in which he could be heard in his own defense. Despite the fact that Kodish had "held his position for more than one year", he was denied all rights granted him under Section 16.13b.

b) *Section 16.13b does not contemplate any exceptions for those who have had their probationary periods extended.*

It should be noted that Section 16.13b requiring a hearing does not create any exceptions for those who have had their probationary period extended. If the legislature wanted 16.13b to apply only to non-probationary employees it could have inserted clear and appropriate language to that effect. It did not. The plain language of Section 16.13b states clearly and unequivocally that a firefighter such as Kodish, who has held his position for over a year is entitled to certain rights which defendant did not grant to plaintiff.

c) *The Fire Protection District Act takes precedence over the Illinois Municipal Code should there be a conflict.*

Plaintiff initially notes that defendants mis-characterize the probation provision of Article 10 of the Municipal Code. The Code does not mandate a one year probationary period. Rather, it limits probation to a maximum of one year.

3

Even if the Municipal Code did not require a termination hearing for the plaintiff, the plaintiff would have been entitled to a hearing under the Fire Protection District Act, which takes precedence over the Municipal Code if provisions are inconsistent. Section 16.01 of the Fire Protection District Act states, "*Unless inconsistent with this Act*, the provisions of Division 2.1 of Article 10 of the Illinois Municipal Code shall apply, to the extent that they may be made applicable, to fire protection districts subject to Section 16.01 to 16.18, inclusive." (emphasis added)

Section 16.13b of the Fire Protection District Act states that a firefighter who holds his position for more than one year is entitled to a hearing. To the extent that the Municipal Code holds that Kodish is not entitled to a hearing, it is inconsistent with the Fire Protection District Act, and, by the plain language of the Fire Protections District Act, does not apply.

> d) *The OTFPD policy manuals cannot limit rights given under the Fire Protection District Act.*

Clearly, as a matter of law, the OTFPD does not have the authority to abrogate Illinois law as found in The Fire Protection District Act. Therefore, no department policy or manual can take away rights afforded plaintiff under the Fire Protection District Act.

> e) *Cases cited by defendants are easily distinguishable from the instant matter.*

Defendants cite to a case from the Central District of Illinois, Lewis v. Harris, 965 F. Supp. 1179 (C.D. Ill. 1997) as support for its motion. Lewis, however, is easily distinguishable. Lewis was a police officer and not a firefighter. Therefore, the Fire Protection District Act, which Kodish is basing his claim on, had no application to Lewis. In fact, the Court in Lewis clearly held that his termination was governed by the Illinois Municipal Code. Lewis, 965 F.

Supp. 1179, at 1182. In contrast, Kodish's termination was governed by the Fire Protection District Act.

Perhaps the largest factual difference between the instant matter and <u>Lewis</u> is the length of employment of the two plaintiffs. Lewis had clearly been employed less than one year. Kodish, on the other hand, was clearly employed for more than one year. Lewis had very different facts and applied a different statute than the instant matter. As such, it does not support defendants' motion for summary judgment.

Defendants also rely on <u>Romanik v. Board of Fire and Police Commissioners of East St. Louis,</u> 61 Ill 2d. 422 (1975) which does not apply to the instant matter because it applied the Illinois Municipal Code and did not involve a firefighter or the Fire Protection District Act.

<u>Romanik</u> is easily distinguishable. 1) Romanik was a policeman, not a firefighter; 2) there was no factual question as to whether he was a probationary policeman at the time of discharge; 3) Romanik did not allege a violation of his constitutional rights; and 4) since the plaintiff was not a firefighter, the Court relied upon the Illinois Municipal Code and had no reason to review the Fire Protection District Act. In <u>Romanik,</u> the Court ruled on a probationary policeman's rights under the Illinois Municipal Code. In the instant matter, we are asking the court to review the rights of a firefighter who held the position more than one year under the Fire Protection District Act. <u>Romanik</u> is inapposite.

Defendant also cites <u>Kuykendall v. Board of Education of Evanston Township High School District No. 202,</u> 111 Ill. App. 3d 809 (1st Dist. 1982), which is even less on point than the other cases cited by defendants. In <u>Kuykendall</u>, the plaintiff was a school teacher who was terminated. Plaintiff claimed that she had acquired tenure pursuant to provisions of the School

5

Code (Ill. Rev. Stat., Ch. 122, par.24-11) Defendant school district claimed she did not. The crux of the dispute was whether time spent as a part-time teacher counter toward her 2 years of work needed for tenure. The court held that part time work did not count toward tenure. It is so different from the instant case as to provide no guidance. The differences include 1) it dealt with a provision of the School Code, not the Fire Protection District Act, or even the Municipal Code; 2) plaintiff was looking to count part time work toward tenure, which is not in issue in the instant case; 3) Kuykendall did not claim a constitutional deprivation.

Defendants fail to cite to any case which supports its motion for summary judgment.

2)    Even if this Court finds that a probationary employee is not entitled to a termination hearing under the Fire Protection District Act, summary judgment must be denied because there is a factual dispute whether <u>Kodish was a "probationary" firefighter at the time he was discharged.</u>

According to the District's policy manual, Plaintiff was supposed to serve a one year probationary period. He was commissioned by OTFPD on June 11, 2003, but began working on June 3, 2003. Therefore, his probationary period should have concluded on June 2 or 10, 2004. However, defendants allege that due to the plaintiff missing 4 months due to a work injury, his probationary period was extended by 90 days pursuant to a policy manual of OTFPD.

Defendants argue in their brief that Plaintiff was a probationary officer at the time of his discharge and therefore did not have a property interest in his position as a firefighter. However, there is a question of fact over whether Kodish was probationary when terminated on August 11, 2004. Chief Sebesta kept a "Summary of Employment" on every firefighter, in which he would note pertinent facts relative to the employee's employment. (SF #3) In his notes on Brian Kodish, he entered the following: "June 2, 2004, employee earned 72 hours of accrued sick time for completion of probationary period." (SF #4) This admission from Chief Sebesta himself

6

is bolstered by the fact that in December 2004, Brian Kodish was paid for those 72 unused sick hours, which accrued at the end of the probationary period. (SF #4)  Further, plaintiff received unemployment benefits which would only be due upon termination. (SF. 16)

Therefore, we have 2 material facts from the defendants' themselves that Kodish ended his probation in June of 2004, which contradicts their position that he was still on probation when terminated on August 11, 2004.  If not on probation, he clearly would be entitled to a hearing.  Since there is a factual dispute as to whether plaintiff was  a probationary firefighter when terminated, summary judgment must be denied.

**B)** **Plaintiff does not choose to proceed with his claim that he was deprived of a liberty interest, but rests upon his claim upon the deprivation of property interest.**

Deprivation of a liberty interest is one method of proving a violation of due process.  Plaintiff elects to limit his due process claim on the alternative basis of violation of a protectable property interest, as argued above.

**C)** **Defendants' argument that plaintiff had no protectable property interest because he resigned ignores the fact that Plaintiff had already been terminated by the Board of Trustees at the time he signed Sebesta's "resignation" letter.**

1) The Board terminated Kodish at their August 11, 2004 board meeting, before he signed the letter of resignation.

Defendants assert that the Petitioner cannot claim that he was denied due process because he was not terminated, but, rather, resigned on August 12, 2004.  The defendants fail to tell this court that the Board of Trustees, which had the sole authority to terminate an employee, voted on August 11th (the day before the "resignation") to terminate Kodish.  (SF #6)  Sebesta admitted

telling Kodish on August 12th, "as of the August 11, 2004 board meeting that [Kodish's] employment had been terminated". (SF #7) Sebesta also told Kodish on the 12th, "I am not here to negotiate your termination. You have been terminated." (SF #7) Therefore, Sebesta told Kodish on August 12th that he had been terminated on the 11th, one day before defendants argue he "resigned".

        2)     Even if the Board of Trustees had not terminated Kodish on August 11th, whether the resignation was voluntary is an issue of fact which precludes <u>summary judgment</u>.

Whether a resignation is voluntary or not is not a proper subject for a motion for summary judgment because "the voluntary nature of a resignation is an issue of fact." <u>McGucken v. U.S.</u>, 187 Ct. Cl. 284, 288. Even if the Board of Trustees had not terminated the plaintiff on August 11, 2004, the "resignation" letter drafted by Sebesta and signed by Kodish on August 12th would not bar Kodish's constitutional claim. Defendants cite case law that there is a presumption that a resignation is voluntary unless shown otherwise. However, there are numerous facts which indicate that the plaintiff's "resignation" was not voluntary.

In <u>Paroczay v. Hodges</u>, 297 F. 2d 439 (D.C.Cir. 1961) the Court noted that the fact that defendant employer had asked for an immediate resignation rendered it involuntary. In the instant matter, Sebesta admits that if Kodish did not sign the resignation letter immediately that he would have given him an already drafted termination letter. (SF #8 and 9) Kodish understood that if he refused to sign the resignation letter at that time, he would have been terminated. (Df. Ex. A, pages 109-114)

There are additional facts showing that the "resignation" was coerced.  Resignation is coerced if "the employee can show that his superior knew or believed that the reasons for the proposed separation could not be substantiated." Illinois ex rel. Schoepf v. Board of Ed. 606 F. Supp. 385 (N.D. Ill. 1985)  In Covington v. Dept. of Health and Human Services, 750 F. 2d 937, 943 (U.S. Ct App. To Fed Ct 1984), the court in discussing whether plaintiff made the choice to resign held, "The law also requires that a choice between two alternatives, however unpleasant, must be understood by the employee and that such a decision be freely made.  In this case, the agency was responsible for [plaintiff's] lack of an informed choice.  A decision made 'with blinders on', based on misinformation or a lack of information cannot be binding as a matter of fundamental fairness and due process."

Kodish asserts facts which show that Sebesta knew that the reasons for the proposed separation were false and could not be substantiated. Sebesta admits telling Kodish in his office on August 12th that he took an unexcused absence on the 9th , that he had told that to the Board who then decided to terminate him. (SF #10)  However, 3 days before telling Kodish he took an unexcused absence, Sebesta wrote in Kodish's "Summary of Employment" "47. August 9, 2004, employee Brian Kodish contacted the station and advised that he could not work his scheduled shift.  Employee was deducted 24 hours from his *accrued sick time*."  (Emphasis added) (SF #11) Clearly, Sebesta's own notes prove that Sebesta knew that the reason he gave Kodish for termination was false.

Further, it can be shown that the "resignation" cannot be voluntary because Sebesta lied about other matters to induce Kodish to sign the Sebesta-drafted letter.  The following additional

untrue statements were made by Sebesta to Kodish on August 12th in order to force Kodish to sign the letter of resignation.

1)      that he intended that Kodish could keep his insurance until the end of the year. In fact, Kodish had to pay for COBRA starting in September, 2004. (SF #12-14)

2)      Sebesta told Kodish "you can't get" unemployment benefits" if he was terminated because Oakbrook Terrace does not pay into it. In fact, Kodish did wind up receiving unemployment benefits.(SF #15, 16)

3)      Sebesta obviously showed Kodish a false sick leave policy in order to coax his resignation, because the policy shown was different that the one in the manual given to Kodish. (SF #17)

Clearly, the law does not, nor should it, reward a defendant for lying to its employee to induce a resignation. The facts show that the "resignation" was not voluntary because it was based upon knowingly false information provided by Sebesta. At bare minimum, there is at minimum a question of fact as to whether Kodish signed the resignation letter voluntarily.

In the instant matter, the Plaintiff was terminated on August 11, 2006 by a vote of the Board of Trustees. Therefore, Kodish was terminated without a hearing, thereby denying him his due process rights under the 14th Amendment. Even if he had not been terminated, there is a question of fact whether the resignation was voluntary due to the knowing factual misstatements made by Sebesta in coercing Kodish to sign the resignation letter.

## II.      PLAINTIFF WAS TERMINATED BECAUSE HE EXERCISED HIS FIRST AMENDMENT RIGHT TO EXPRESS PRO-UNION VIEWS.

Defendants correctly recite the test the Court must use to determine whether an employee's First Amendment rights have been abridged. The Courts employ a 3 part test, 1) whether the Plaintiff engaged in constitutionally protected speech; 2) whether his protected

speech was a substantial or motivating factor in the decision to discharge him; and 3) whether the District has defeated the public employees claim by demonstrating that it would have taken the same action in the absence of the protected conduct. Thompson v. Board of Education of the City of Chicago, 711 F. Supp. 394, 401, 402 (N.D. Ill. 1989) Clearly, a key issue is the credibility, intent and motive of defendants in terminating the plaintiff. "Cases in which the underlying issue is one of motivation, intent or some other subjective fact, are particularly inappropriate for summary judgment as are those in which the issues turn on the credibility of the affiants". Conrad v. Delta Airlines, Inc., 494 F. 2d 914, 918 (7th Cir. 1974)

     **A)**     **whether the Plaintiff engaged in constitutionally protected speech.**

This first prong is clearly met because the Supreme Court has held that "attempts to persuade to action with respect to joining or not joining unions are within the First Amendment's guaranty." Thomas v. Collins, 323 US 516, 537-538 (1945) Clearly, Kodish made considerable efforts to persuade his fellow firefighters to unionize. Defendants do not contest that plaintiff can meet this prong in their memorandum of law and thereby concede same.

     **B)**     **whether his protected speech was a substantial or motivating factor in the decision to discharge him.**

Kodish does not have to show that his unionizing activities were the sole motive for his termination. Thompson, 711 F. Supp. 394, 408. Whether plaintiff's unionizing speech in the firehouse was a substantial or motivating factor in the decision to discharge him is clearly a question of fact and therefore not suited for determination on a motion for summary judgment. Plaintiff provides more than ample evidence that indicates that the plaintiff's union speech was a substantial or motivating factor in the decision to terminate him.

Sebesta told Kodish during a conversation early in his employment that the problem with unions is that you are bound by the union contract and "have to live and die by the rules" (SF #20). On August 12, 2004, when Sebesta told Kodish he was terminated for taking a day off that he did not have coming Sebesta told Kodish "you have to live and die by the rules". (SF #20) These were the only 2 times that Sebesta used that phrase and shows a subtle but clear message that Kodish's termination was motivated by Kodish's desire to unionize. (SF #20)

It is not disputed that plaintiff was vocal in wanting the fire department to be unionized. Sebesta admits that Kodish was "very much pushing for a union". (SF #19) Sebesta believed that Kodish's union talk should not have been discussed in the firehouse. (SF #23)  In September, 2003, OTFPD attorney Fassola issued a legal opinion letter that OTFPD was not eligible for a union. Sebesta felt that the legal opinion should have been the end of Kodish's unionization talk, and that it was thereafter "a non-discussable issue". (SF #22) Sebesta testified that Kodish "kept going on" about unions and "couldn't let it go at that". (SF #23)

On September 10, 2004, Clint Johnson, Fire Chief of Homewood Fire Dept. called Sebesta to inquire about Brian Kodish, who had applied for employment with Homewood. Sebesta told Johnson little, but Johnson's notes show that Sebesta told Johnson that  "Kodish had discussed unionization with the OBT personnel; OBT is non-union." (SF #27) Sebesta volunteered the union issue to Chief Johnson.(Def. Ex. Q, p. 37) Sebesta obviously felt that Kodish's union views were important to his employment if he saw fit to mention it to a potential employer.

12

Further, documentation from defendants also shows that Kodish' union activities were monitored by them. In the "Summary of Employment" prepared by Sebesta, entries number 4, 5, 6, 7, 9 and 11 relate to Kodish and unions. (SF #24)

> Entry #4 states, "August 20, 2003, Fire Chief Gregory J. Sebesta was approached by firefighter/EMT-B Michael Kuryla indicating that he was approached by Firefighter/paramedic Brian R. Kodish requesting that Michael Kuryla contact Firefighter/paramedic Ryan Gilleran to get his viewpoint in Brian Kodish pursuing a Collective Bargaining Unit amongst the Full Time employees." (SF #25)

Entry #11 shows that Sebesta was trying to prevent Kodish from speaking with his fellow firefighters about unionization. It states, in pertinent part, "Chief Sebesta further indicated to Firefighter/Paramedic Kodish that if there are issues of this magnitude to address them directly to the Fire Chief and not get other employees involved with issues that they cannot render a decision on." (SF #26)

In closed session with the Board, Sebesta directed the trustees, If you look at as far as the summary of employment, there's a lot of activity right off the bat then." (Df. Ex. S, p. 24) The "early activity" is clearly related to Kodish's unionizing activities noted in paragraphs 4, 5, 6, 7, 9, and 11. Surprisingly, Defendants never deny that Kodish was terminated because of his union activities. They do not present any evidence from documents, depositions or affidavits that Kodish's union activities were not a motivating factor in his termination.

In summary, it is clear that there are numerous facts in which a jury could find that Kodish's unionizing activity was a substantial or motivating factor in his termination. As such, these facts raise a genuine issue of material fact which precludes summary judgment.

**C.	Whether the District has defeated Kodish's claim by demonstrating that it would have taken the same action in the absence of the protected conduct.**

There is a genuine issue of material fact as to whether the District would have discharged Kodish in the absence of his pro-union views.  Clearly, this requires weighing the conflicting evidence and the credibility of the witnesses. As such, summary judgment is inappropriate.

     1)     Contrary to defendants' assertion, there is evidence in the closed session transcript <u>that Sebesta was punishing Kodish for his pro-union views.</u>

Defendants state that in the closed session meeting which resulted in Kodish' termination, "there is no indication that [Kodish] pro-union speech was considered as a reason to discharge him."  Initially plaintiff notes that most employers who want to terminate an employee for a clearly illegal reason usually know better than to make a taped record of their illegal activity, and obviously defendants are no different.

However, in the closed session transcript, Sebesta does tip his hand as to his view of Kodish's unionization efforts.  In August, 2003, Sebesta and OTFPD board attorney Fassola discussed Fassola's review of the Collective Bargaining Statute.  In the closed session Sebesta discussed the Fassola review and complained that Kodish did not agree with Fassola.  Sebesta told the Board that "We've received corporate counsel review of a question that was approved by the Board of Trustees regarding collective bargaining.  And once [Kodish] was privy to that information still challenged myself, you and counsel, based on his response …".  Sebesta felt that Kodish, in questioning Fassola's opinion "put [himself] in a compromising position."  (Df. Ex. S, p 18-19) Sebesta did not elaborate on why he though Kodish questioning Fassola's opinion on collective bargaining put Kodish in a "compromising position". He obviously felt that

it compromised Kodish' employment. Sebesta then went on to state that the money spent on the Fassola review was spent on "nonsense" and a waste of taxpayer dollars. (SF #40)

In closed session, Sebesta continued discussing Kodish's response to the legal opinion letter on unions and said that Kodish "made a complete mockery. Basically said to corporate counsel, had no idea what he was talking about." (Df. Ex. S, p. 22) He immediately thereafter said that Kodish would "mess with the system here" and "screw with what we've established". (SF #34) Clearly, Kodish's alleged deficiencies do not "mess with the system" or "screw with" what has been "established" at OTFPD. Only his union activities could be viewed that way. Sebesta showed clear animus toward Kodish's pro-union stance in the closed session discussion.

2)    The alleged reasons Sebesta gave for wanting to terminate Kodish were pretextual <u>in that they were either vague and/or unsupported by facts</u>.

Once again, the balancing of various facts and the determination of whether defendants' alleged reasons for termination were pre-textual are questions of fact for a jury. In the instant matter, the finder of fact could find defendants' reasons for termination to be a pretext in that they were vague, unsupported by facts, and inconsistent.

The one point that is readily apparent from reading the closed session transcript is that Sebesta nor the Board cite to any specific reasons for termination. No one says Kodish cannot perform his job duties adequately and no one says he violated any rules or procedures.

Sebesta admitted to the Board of Trustees in the closed session that "[Kodish] can do the job." (SF #34) Kodish worked for OTFPD for a total of more than 10 months. He worked continuously for approximately 10 months (June 3, 2003 to March 24, 2004), then missed 4 months due to a work injury (March to July 2004) and returned for approximately 2 weeks

before the Board terminated him. During that time, the only discipline he received was one verbal reprimand in February 2004, for failing to let the engine cool off before parking a vehicle in the firehouse. (SF #37) OTFPD employs progressive discipline, which includes verbal reprimand, written reprimand, suspension and then termination. Kodish never received a written reprimand or suspension before being terminated by the OTFPD. (PL. Ex. E)

Further evidence that Kodish's termination was pre-textual is the fact that virtually every reason Sebesta gave to the Board at the closed session was denied or contradicted by his own deposition testimony. In the closed session, Sebesta told the Board Kodish "consistently brings down the organization to a negative status " and that Kodish had a "shit attitude" and showed "constant negativity toward the group" (SF #38) In his deposition, he testified he believed Kodish' attitude in the firehouse was not positive or negative, but neutral. (SF #39)

In closed session, Sebesta told the Board, that Kodish "has not played by the rules". (SF #36) Kodish only had one oral reprimand in 10 months.

In closed session, Sebesta told the Board that Kodish could do the job, but that it was "the constant challenge of authority, whether it's his immediate supervisor level or all the way to the top". (SF #34) In his deposition, however, Sebesta testified Kodish did not challenge his authority. Sebesta heard Kodish had challenged Lt. Turkovich's authority but Sebesta concluded it was "more of a personality between those two. Nothing that warranted my intervention as far as discipline". He did not recall Kodish challenging anyone else's authority. (SF #35)

Clearly, the reasons Sebesta gave the board of trustees for termination were untrue, as

16

videnced by his own deposition testimony. Clearly, giving untrue reasons for termination is evidence that those reasons were pre-textual.

Further, defendants memorandum of law states several purportedly valid reasons for terminating Kodish, i.e. causes disturbances on his shift, not making a positive impact, etc. (p. 9 of Memo) It should be noted that those reasons were never mentioned by Sebesta or the Board in the closed session meeting.

Clearly, the above indicate that there is a question of fact as to whether defendant's reasons for termination were pre-textual, which precludes summary judgment.

**III.  PLAINTIFF WAS WRONGFULLY TERMINATED BECAUSE HE WAS DISCHARGED IN RETALIATION FOR EXERCISING HIS RIGHT TO FILE A CLAIM FOR WORKERS COMPENSATION.**

The law in the area of retaliatory discharge has addressed the issue of whether a forced resignation is sufficient to constitute a "discharge" and has answered with a resounding "yes". In Hinthorn v. Roland's of Bloomington, Inc., (Ill. 2d. 1988) 119 Ill. 2d 526, the Supreme Court of Illinois agreed with the appellate court's decision which held that "a cause of action for retaliatory discharge exists for an employee who has been forced to resign under the express or implied threat of discharge". Hinthorn, 119 Ill. 2d at 530 In the instant matter, it is not disputed that the Board of Trustees voted to terminate plaintiff on August 11, 2004. It is also not in dispute that on August 12th, Sebesta told Kodish that the Board voted to terminate him and would do so if he did not resign.

Illinois law recognizes a claim for retaliatory discharge for filing a workers compensation claim. Three elements are necessary to establish the cause of action. The plaintiff must show 1)

that he was an employee of the defendant before his injury; 2) the plaintiff's exercise of a right granted by the Worker's Compensation Act; and 3) that his discharge was causally related to the filing of the workers' compensation claim. Groark v. Thorleif Larsen & Son, Inc., 231 Ill. App. 3d 61, 596 N.E. 2d 78, 81, 172 Ill. Dec. 799 (1st Dist. 1992)

**A.    Plaintiff was undisputedly an employee of the defendant Oakbrook Terrace Fire Protection District.**

The plaintiff was hired on June 2, 2003 and was terminated on August 11, 2004.

**B.    Plaintiff's exercise of a right granted by the Workers Compensation Act**.

In the instant matter, Kodish was forced to resign before his Workers Compensation claim could be filed. The case law is clear that one does not have to have already filed a Workers Compensation claim prior to discharge in order to establish a claim for retaliatory discharge. Bray v. Stan's Rental Inc. 196 Ill. App. 3d 384, (3rd Dist. 1990)  It is enough if the employer was informed that plaintiff was pursuing remedies under the Act. Mercil v. Federal Express Corp., 664 F. Supp. 315 (N.D. Ill. 1987)

The holdings of the cases cited above are logical and consistent with protecting an employee from making a workers compensation claim. The tort of retaliatory discharge is to protect a worker who makes a claim from being discharged because of that. It would make no sense for the law to prohibit firing an employee who makes a claim, but not protect an employee who tells his employer he will be filing a claim. If the law did not protect an employee who told his employer he was going to file a claim, but had not yet done so, the law would be encouraging and sanctioning a race between filing a claim and discharge.

18

Plaintiff was injured at work. He reported the work injury to his supervisors on December 23, 2003. He was off work due to the work injury from approximately March 24, 2004 until approximately July 23, 2004. In early August, plaintiff received a letter from the Illinois Public Risk Fund, OTFPD's insurer, informing him that it was not paying his medial bills because they believed it was not a work related injury. Brian Kodish told Chief Sebesta that he received a letter from IPRF and that they were denying the medical claim. Chief Sebesta said he heard that. Kodish told Sebesta he would have to speak to a lawyer. (SF #49)

On August 9, 2004, plaintiff was scheduled to see an attorney to file a workers compensation claim. He was supposed to work that day but called the firehouse and said he needed to take the day off. August 12th was the next day he was scheduled to work. When he showed up that day, Chief Sebesta took him into his office, told plaintiff he took a day off on August 9th he had not earned and forced him to sign a resignation letter.

While Kodish was off work, OTFPD had to pay 2/3 of his salary and overtime to another firefighter for every shift he wasn't there. Sebesta identified the cost as being "an exorbitant amount." (SF #44)

**B)  Plaintiff's termination was causally related to exercising rights under the workers compensation act.**

Clearly, an employee has the right to file a workers compensation claim for a work injury. "Concerning the element of causation, the ultimate issue to be decided is the employer's motive in discharging the employee". Hartlein v. Illinois Power Co., 151 Ill. 2d 142 (Ill. 1992) The resolution of such a case depends on the credibility of the witnesses. The credibility of the

witnesses and the weight to be given their testimony is uniquely the province of the jury. <u>Netzel</u> <u>v. U.P.S.</u>, 181 Ill. App. 3d 808 (1st. Dist. 1989)

A short time span between the exercise of the employee's rights under the Act and the actions discharging the employee can make a prima facie case of retaliatory discharge. <u>Hugo v.</u> <u>Tomaszewski</u>, 155 Ill. App. 3d 906 (5th Dist. 1987), <u>Wolcowitz v. Intercraft Industries Corp.</u>, 133 Ill. App. 3d 157 (1st Dist. 1985) In the instant matter, Kodish told Chief Sebesta in early August that he would have to see a lawyer about the denial of workers compensation benefits. The next shift he called in sick in order to see an attorney.  He was terminated before his next shift with the Chief telling the Board of Trustees that Kodish took a sick day he did not have. Clearly, a reasonable jury could find that Plaintiff was discharged for exercising remedies under the Workers Compensation Act.

## DEFAMATION

Plaintiff elects to not contest the defendant's motion as to the defamation count.

## CONCLUSION

For reasons stated above, defendants' motion for summary judgment must be denied because there are genuine issues of material fact and the defendants are not entitled to judgment as a matter of law.

Respectfully submitted,

    /s/ Gregory J. Abbott
Attorney for plaintiff Brian Kodish

Gregory J. Abbott
Law Office of Gregory J. Abbott
5205 South Washington Street
Downers Grove, IL 60515
(630) 963-7938

<u>CERTIFICATE OF SERVICE</u>

The undersigned, Gregory J. Abbott, an attorney, certifies that he served the following:

Plaintiff's Response to Defendants' Motion for Summary Judgment

By e-filing to Stephen H. DiNolfo, at Ottosen Trevarthen, Britz, Kelly & Gilbert, 300 South County Farm Road, Third Floor, Wheaton, IL 60187, on or before 5:00 p.m. on November 27, 2006.

Date: _November 27, 2006

__ /s/ Gregory J. Abbott

21