IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT, EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN KODISH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 4620 |
| | ) | |
| v. | ) | |
| | ) | Judge Filip |
| OAKBROOK TERRACE FIRE | ) | |
| PROTECTION DISTRICT, GREGORY | ) | |
| J. SEBESTA, DONALD VENTURA, ANDY | ) | Magistrate Denlow |
| SARALLO, and JOE DRAGOVICH, | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**A.  JURISDICTION AND VENUE**

1. Plaintiff invokes the jurisdiction of this Honorable Court under 28 U.S.C. § 1331 and 1343 pursuant to 42 U.S.C. §983, statutes and common law of the State of Illinois, and the constitutions of the United States and the State of Illinois. **(Complaint at ¶¶ 5-6).**

    RESPONSE:   Plaintiff does not dispute.

2. At all times relevant to the Complaint, all parties resided, and all actions complained of occurred, within the Northern District of Illinois. **(Complaint at ¶ 7).**

    RESPONSE:   Plaintiff does not dispute.

**B.  FACTS SUPPORTING SUMMARY JUDGMENT**

3. Brian Kodish (hereinafter referred to as "Plaintiff") was hired as a probationary firefighter/paramedic by the Oakbrook Terrace Fire Protection District (hereinafter referred to as the "District") effective June 2, 2003. **(Deposition of Brian Kodish at p. 10, attached hereto as Exhibit "A").**

    RESPONSE:   Plaintiff does not dispute.

4. The District has an Employee Wage and Benefit Policy for Full-Time Commissioned Employees which was in effect at all times relevant to the Complaint. **(Oakbrook Terrace Fire Protection District Employee Wage and Benefit Policy for Full-Time Commissioned Employees, attached hereto as Exhibit"B"; Exhibit "A" at pp. 16-17).**

      RESPONSE:   Plaintiff does not dispute.

5.     The District's Wage and Benefit Policy states that:

"All new employees. . . shall be considered probationary employees until they complete a probationary period of twelve (12) months, provided that the probationary period may be extended if the employee is absent from duty for a period of more than thirty (30) calendar days continuously or more than thirty (30) duty days in the aggregate. In such event, the employee's probationary period may be extended for an additional period sufficient to make up for the lost work time but not to exceed ninety (90) calendar days. During an employee's probationary period the employee may be suspended or terminated at the sole discretion of the employer." **(Exhibit "B" at p. 4).**

      RESPONSE:   Plaintiff does not dispute.

6.     Plaintiff received and read a copy of the District's Wage and Benefit Policy on June 2, 2003, and acknowledged being bound by the policy. **(Exhibit "A" at pp. 15-17; Exhibit "C").**

      RESPONSE:   Plaintiff does not dispute.

7.     During his employment with the District, Plaintiff received at least four performance evaluations. Performance evaluations for probationary firefighters rated the firefighter in seven areas; Personal Appearance, Job Knowledge, Skill Level (Practical), Initiative, Quality of Work, Performance on Calls, and Overall Impression. Each area is rated Excellent (E), Good (G), Fair (F), Poor (P), or Unsatisfactory (U). The performance evaluation also includes an assessment of the employee's potential to be a "good addition to the Full Time Firefighting force." There is also a space for the evaluated employee to write any comments about the evaluation. **(Exhibits "F" through "I").**

      RESPONSE:   Plaintiff does not dispute.

8.     On September 27, 2003, Plaintiff received a performance evaluation from Lieutenant John Turkovich. Plaintiff was rated G-Good in Personal Appearance and Job Knowledge, and F-Fair in all other areas. The evaluation contained the following comments: '

    a. Initiative - "more time could and should be spent on district familiarization along with any noticeable attention throughout the station, with no drive or request from his officers."

    b. The assessment of potential for continued service states: "Brian needs to focus less on his past tours and present himself in a timely fashion to his fellow

      coworkers in a constructive manner with less interference in administrative duties that causes a disturbance within the shift."

    c.  Plaintiff did not write any comments on the evaluation form. **(Exhibit "F"; Exhibit "A" at pp. 91-95).**

    RESPONSE:   Plaintiff does not dispute.

9.   On or about November 14, 2003, Plaintiff and Firefighter Donald Bodan got into an argument during dinner at a training event. Captain David Clark had told Plaintiff to go ahead of him in the food line. Bodan, unaware of this, told Plaintiff that he should show Captain Clark some respect and not cut in front of him. This incident later led to a confrontation between Plaintiff and Bodan at the fire station. As a result of this confrontation, Captain Clark called Chief Sebesta to the station to intervene and counsel Plaintiff and Bodan. Chief Sebesta informed Plaintiff and Bodan that their employment could be in jeopardy if the conduct continued. **(Exhibit "A" at pp. 42-49).**

    RESPONSE:   Plaintiff does not dispute.

10.   On November 14, 2003, Plaintiff received a performance evaluation from Chief Sebesta. Plaintiff was rated G-Good in Personal Appearance and F-Fair in all other areas. The evaluation contained the following comments:

    a.  Job Knowledge - "At times employee may have some resistance toward receiving corrective criticism." - "Needs to remain focused on specific task assignments."

    b.  Initiative - "At times slow in the motivation area."

    c.  Quality of Work - "Could do more than just the basics, work on being a leader not a follower." - "When effort is applied, outcome of work or task is average." - "Needs to remain focused on task at hand. Address issues that involve you and not others."

    d.  Plaintiff did not write any comments on the evaluation form. **(Exhibit "G"; Exhibit "A" at pp. 96-99).**

    RESPONSE:   Plaintiff does not dispute.

11.   On December 15, 2003, Plaintiff and Firefighter Patrick Arends had a confrontation. Plaintiff testified that he yelled at Arends, saying "You know, you stabbed me in the back," and "Don't do that again." Plaintiff testified that he could not recall any other specific information about the incident. **(Exhibit "A" at pp. 25-25, 58-62).** Later that day, Arends wrote a letter to Chief Sebesta regarding the incident. Arends said that when he called the station to say that he

would be late, Plaintiff said he wanted to speak to Arends when he arrived, and that Plaintiff wanted to "get the knife out of my back that you stuck in me." When Arends arrived at the station, Plaintiff called him a liar and said that if Arends stabbed him in the back again, "that will be it." Arends wrote that he asked Plaintiff if that was a threat, to which Plaintiff replied "yes you can consider it a threat, you can consider it what ever you want it to be." **(Exhibit "J").** Also that day, Lieutenant Halik wrote a letter to Captain Clark regarding the incident. Halik wrote that Plaintiff told Arends that if Arends "[keeps] this up that he (F/M Kodish) 'would take him out.'" **(Exhibit "K").** Plaintiff testified that although he has no specific recollection of this, "take him out" is not something he would normally say. **(Exhibit "A" at p. 62).**

  RESPONSE:  Plaintiff does not dispute that defendants have accurately quoted from the Arends letter.

12.  On or about December 17, 2003, Plaintiff alleges that he injured his left knee as a result of having to repeatedly get up and down from a kneeling position, and sitting and kneeling in awkward positions while responding to a call. (Complaint at ¶10; Exhibit "A" at p. 64).

  RESPONSE:  Plaintiff does not dispute.

13.  At -the time of Plaintiffs injury, there was in effect a Policy Manual which contained a rule requiring any employee injured "while on duty or at work" to report the injury to his or her superior "immediately." (Exhibit "D"). Plaintiff acknowledged receiving and reading this Policy Manual. (Exhibit "E"). Plaintiff reported his knee injury in a memo to Chief Sebesta on or about December 23, 2003, approximately six days later. Plaintiff continued to work until March 2004. (Exhibit "L").

  RESPONSE:  Plaintiff does not dispute.

14.  On January 8, 2004, EMS Coordinator Arends wrote a memo to Chief Sebesta regarding deficiencies in Plaintiff's patient care reports for November and December 2003. The memo states that Arends had spoken to Plaintiff on several occasions over the previous six months about the run reports, but that there had been no improvement in the quality of Plaintiff's reports. (Exhibit "M").

  RESPONSE:  Plaintiff does not dispute.

15.  On January 21, 2004, Plaintiff received a performance evaluation from Defendant Chief Sebesta. Plaintiff was rated G-Good in Personal Appearance and F-Fair in all other areas. The evaluation contained the following comments:

  a.  Job Knowledge - "Employee demonstrates resistance toward receiving corrective criticism. Employee needs to gain an understanding of keeping an

      open perspective on areas of weakness and not feel that supervisors or coworkers are out to get him."

  b. Skill level - "your documentation skills have been inconsistent based on Good Samaritan report writing policies." - "deficiencies toward MICU Report writing" - "Presentation format in dealing with outsiders and department personnel needs enhancement"

  c. Initiative - "At times slow in the motivation area."

  d. Quality of Work - "Could do more than just the basics, work on being a trendsetter not a follower." - "Needs to remain focused on the task at hand."

  e. Performance on Calls - "At times work demonstrates a reactive approach on EMS responses versus being proactive." - "At times appears to be apprehensive versus aggressive."

  f. The assessment of potential for continued service states: "Based on the "employee's second quarter review, it is my opinion that Brian Kodish has not addressed issues that have been brought to his attention prior to this

      evaluation period. Brian's overall presence within the department is of, one who is providing a position within the department and not making a positive key impact role. ... It appears that you are consistently demonstrating what is in your best interest and not the best interest of the Fire District and coworkers. ... I have great concerns as to whether you can recognize and meet the challenges of fire service while being employed by the Oakbrook Terrace Fire Protection District. ... At this review period, your continued employment with the Fire District is being questioned."

  g. Plaintiff did not write any comments on the evaluation form. **(Exhibit "H"; Exhibit "A" at pp. 100-04).**

    RESPONSE:   Plaintiff does not dispute.

16. On February 8, 2004, EMS Coordinator Arends wrote a memo to Assistant Chief Ralph DeLuca concerning deficiencies in Plaintiff's run reports. Arends identified several deficiencies from Plaintiff's recent run reports including failure to include required information, and failure to complete required fields. **(Exhibit "M").**

    RESPONSE:   Plaintiff does not dispute.

17. On February 11, 2004, a meeting was held between Plaintiff, Assistant Chief Ralph DeLuca, and EMS Coordinator Patrick Arends regarding Plaintiff's performance in the area of properly completing medical reports. Plaintiff admitted

       not properly completing the reports, but questioned some of the policies established by the hospital for completing the reports. **(Exhibit "N"; Exhibit "A" at pp. 71-72).**

       Response: Plaintiff disputes this statement of fact. Plaintiff only admitted to not properly completing one report, not "reports". (p. 72 of Ex. A) Further, plaintiff testified that Arends written statement that Kodish "questioned some of the policies established by the hospital" was "misconstrued". (p. 72 of Ex. A)

18. On February 26, 2004, Captain James Vejvoda issued Plaintiff a verbal reprimand for failing to comply with District rules. Plaintiff had shut down the engine of a District vehicle without letting the engine cool down for 2-3 minutes as required to prevent damage to the engine. **(Exhibit "0").**

       RESPONSE: Plaintiff does not dispute.

19. On March 18, 2004 Plaintiff received a performance evaluation from Captain Vejvoda. Plaintiff was rated G-Good in Personal Appearance, Quality of Work, and Performance on Calls, and F-Fair in all other areas. The evaluation contained he following comments:

    a. Job Knowledge - "Brian's knowledge of Fire District equipment, response area and operating procedures were very poor upon his coming to gold shift. It has improved slightly over the past several months; however it is still below average at this point. You have been told on several occasions, that during down time you should be studying equipment, maps and policies. You have not demonstrated any initiative to improve upon these identified deficiencies.

    b. Skill level - "Brian's skill level is average. Brian's skill level needs to improve during the next review evaluation. Brian seems to only want to complete what is expected of him and not go that extra step; he does not "appear to have any pride in his job performance or the Fire District. Brian has the tendency to be slow on calls.

    c. Quality of Work - "However Brian will not initiate many projects or does not appear to want to go that extra step, he will only do what he is told and no more."

    d. Overall Impression - "Brian needs to learn how to respect his co workers and Supervisors."

    e. Plaintiff did not write any comments on the evaluation form. **(Exhibit "I"; Exhibit "A" at pp. 104-06).**

       RESPONSE: Plaintiff does not dispute.

20. On or about March 21 or March 24, 2004 Plaintiff went on medical leave as a result of surgery on Plaintiff's knee. (Complaint at ¶ 11; **Exhibit "A" at pp. 84-85; Exhibit "P").**

    RESPONSE: Plaintiff does not dispute.

21. On May 5, 2004, Plaintiff was notified that due to his extended absence and pursuant to the District's Wage _nd Benefit Policy, his probationary period was being extended. **(Exhibit "P").**

    RESPONSE: Plaintiff does not dispute.

22. 0n or about June 18 2004, Plaintiff applied for a position as a paid-on-call firefighter with the Homewood Fire Department. **(Deposition of Clinton Johnson at p. 10, attached hereto as Exhibit "Q"; Exhibit "R").**

    RESPONSE: The date stated is not found in the citations and Plaintiff cannot confirm or deny the date.

23. On or about July 23, 2004, Plaintiff was released to return to work. Plaintiff had been absent for approximately four months. (Complaint at ¶ 12)

    RESPONSE: Plaintiff does not dispute.

24. On August 11, 2004, at a meeting of the District's Board of Trustees, Plaintiff's performance and continued employment with the District was discussed. The meeting was closed to the public pursuant to the Open Meetings Act (5 ILCS ' 120/.1 *et seq.).* During the closed session meeting, Chief Sebesta and the District Trustees; Donald Ventura, Andy Sarallo, and Joe Dragovich, discussed Plaintiff's performance focusing on his lack of respect for the District's leadership and policies, and his unwillingness to work as a member of a team. The Chief and Trustees also discussed offering Plaintiff the option of resigning in lieu of discharge. **(Exhibit "S").**

    RESPONSE: Plaintiff does not dispute the facts contained in this paragraph, however, disputes the characterization of that was "focused on" in the meeting.

25. ln open session, the Board of Trustees voted to authorize Chief Sebesta to draft a letter to terminate Plaintiff's employment with the District. **(Exhibit "T").**

    RESPONSE: Plaintiff does not dispute.

26. 0n August 12, 2004, Plaintiff signed a letter resigning his employment with the District in lieu of facing discharge. **(Exhibit "U").**

  RESPONSE:   Plaintiff does not dispute.

27. Plaintiff testified, in his deposition, that neither Chief Sebesta nor anyone else from the District ever told him that he was being discharged because he filed a Workers' Compensation claim. **(Exhibit "A" at pp. 107, 123).**

   RESPONSE:   Plaintiff does not dispute.

28. Plaintiff further testified that he never felt that he was punished in any way by the Chief or the Trustees for his pro-union views. **(Exhibit "A" at p. 33).**

   RESPONSE: Plaintiff disputes this statement of fact and states that the plaintiff only stated that he did not feel he was punished for one meeting when he was "sitting with the Chief where you discussed unions in general". (Ex. A, p. 32-33)

29. Plaintiff alleged that "former co-workers from a former employer" had heard that the District had given Plaintiff the choice to resign or be discharged. **(Complaint at ¶ 66).**

   RESPONSE:   Plaintiff does not dispute.

30. In his response to interrogatories, Plaintiff identified these former co-workers as John Coburn, Troy Johnson and Keith Johnson. **(Plaintiff's Response to Interrogatories at ¶ 17, attached hereto as Exhibit "V").**

   RESPONSE:   Plaintiff does not dispute.

31.  John Coburn testified that he heard that Plaintiff had been fired from the District through a conversation at the Matteson Fire Protection District where Coburn was employed as a firefighter. **(Deposition of John Coburn at p. 12, attached hereto as Exhibit "W").** He. could not recall who was involved in that conversation. (Exhibit "w" at pp. 12, 14). Coburn spoke to Plaintiff about his discharge from the District, and Plaintiff asked him to speak to Scott Moran at the Homewood Fire Department to find out where Moran had learned that Plaintiff was fired from the District. **(Exhibit "W" at p. 15**). Coburn testified that Moran said he could not remember where he heard about Plaintiff's termination. Moran testified that he did not remember speaking to Coburn and that he had never spoken to anyone from the District concerning Plaintiff. Moran also testified that he did not know why Plaintiff was terminated from the District or why he was not hired at Homewood. **(Deposition of Scott Moran at pp. 11-12, 16, 17, attached hereto as Exhibit "X").** Coburn never spoke to any of the Defendants or anyone from the District about Plaintiff. Coburn testified that he never heard anything about the reason for Plaintiff's termination from anyone except Plaintiff himself, who told Coburn he was offered the chance to resign in lieu of termination because he was trying to unionize the District. **(Exhibit "W" at pp. 11-13).**

      RESPONSE:  Plaintiff does not dispute.

32. Troy Johnson testified that he first heard that Plaintiff had resigned or been terminated from the District from co-workers at the Matteson Fire Protection District where Johnson was employed as a firefighter. He testified that he does not remember who told him about Plaintiff's termination, but that he has not spoken to anyone at the District concerning Plaintiff. He also testified that an unknown person called from the Homewood Fire Department and said that Plaintiff was applying for employment there and was no longer employed at the District. Johnson testified that he heard from his brother, Keith, that Plaintiff was discharged because of his pro-union views. **(Deposition of Troy Johnson at pp. 12-15, 18-19, attached hereto as Exhibit "Y").**

      RESPONSE:  Plaintiff does not dispute.

33. Keith Johnson testified that he first learned that Plaintiff was no longer employed by the District from his brother, Troy, who called to ask about Plaintiff because Keith was Plaintiff's brother-in-law. He also heard about Plaintiff's termination from other firefighters who knew that he was related to Plaintiff and wanted to know what had happened. Johnson testified that he never spoke to anyone from the District about Plaintiff's termination. Johnson further testified that he never heard any information from anyone about why Plaintiff was terminated from the District**. (Deposition of Keith Johnson at pp. 13, 15, 19, attached hereto as Exhibit "Z").**

      RESPONSE:  Plaintiff does not dispute.

34. Alison Wynsma, a firefighter at the District, testified that he heard that Plaintiff resigned, but not that he was given the option of resigning or being discharged. Wynsma received a telephone call from Jason Presnack, a firefighter at Homewood Fire Department, asking about Plaintiff. Presnack wanted to know why Plaintiff no longer worked at the District. Wynsma told him that Plaintiff resigned. **(Deposition of Alison Wynsma at pp. 20-22, attached hereto as Exhibit" AA").**

      RESPONSE:  Plaintiff does not dispute.

35. On August 16, 2004 Plaintiff received a conditional offer of employment from the Homewood Fire Department**. (Exhibit "Q" at p. 11).**

      RESPONSE:  Plaintiff does not dispute.

36. On September 10, 2004, Assistant Chief Clinton Johnson called Chief Sebesta to inquire about Plaintiff's employment with the District. Chief Sebesta told Johnson that Plaintiff had resigned from the District; that Plaintiff had a strong personality; and that if Plaintiff is made aware of Homewood's rules and

      decides he is willing to abide by them, "he might be OK." Nothing that Chief Sebesta said to Johnson caused Homewood to reconsider its conditional offer of employment to Plaintiff. **(Exhibit "Q" at pp. 17, 20-22, 24; Exhibit "P").**

      RESPONSE:   Plaintiff does not dispute.

37. On or about September 28, 2004 Plaintiff was administered a physical examination, which was a requirement of Homewood's conditional offer of employment. As a result of the examination, Plaintiff was informed that he would require an angiogram. **(Exhibit "R").**

      RESPONSE:   Plaintiff does not dispute.

38. On December 26, 2004, Plaintiff suffered a heart attack. **(Exhibit "A" at p. 140).**

      RESPONSE:   Plaintiff does not dispute.

39. On January 25, 2005, Assistant Chief Johnson sent Plaintiff a letter of termination from Homewood Fire Department because Plaintiff had failed to provide the department with his angiogram test results. **(Exhibit "Q" at p. 34; Exhibit "R").**

      RESPONSE:   Plaintiff does not dispute.

40. During his deposition, Plaintiff was asked about false information that was published about him. Plaintiff testified that the only false information he knew of was that he took a day of sick leave that he was not entitled to. However, Plaintiff further testified that he did not know of anyone who had been told that information by anyone at the District. **(Exhibit "A" at pp. 131-32).**

      RESPONSE:   Plaintiff does not dispute.

                        Respectfully submitted,

                        /s/Gregory J. Abbott
                        Attorneys for Plaintiff

Gregory J. Abbott
Law Office of Gregory J. Abbott
5205 S. Washington Street
Downers Grove, IL 60515
(630) 963-7938

CERTIFICATE OF SERVICE

The undersigned, Gregory J. Abbott, an attorney, certifies that he served the following:

Plaintiff's Response to Defendants' Statement of Facts

By e-filing to Stephen H. DiNolfo, at Ottosen Trevarthen, Britz, Kelly & Gilbert, 300 South County Farm Road, Third Floor, Wheaton, IL 60187, at (630) 510-2289, on or before 5:00 p.m. on November 27, 2006.

Date: _November 27, 2006

    /s/ Gregory J. Abbott