# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN KODISH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 4620 |
| ) | |
| OAKBROOK TERRACE FIRE ) | |
| PROTECTION DISTRICT, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment on the claims included in Count I and dismiss the remaining state law claims without prejudice.

## BACKGROUND

Plaintiff Brian Kodish ("Kodish") alleges that he was hired by Defendant Oakbrook Terrace Fire Protection District ("District") in June 2003, to work as a firefighter/paramedic. Defendants Donald Ventura ("Ventura"), Andy Sarallo ("Sarallo") and Joe Dragovich ("Dragovich") are allegedly trustees of the District. According to Kodish, in December 2003, he injured his knee while working for the

1

District.  Starting in March 2004, Kodish allegedly did not report for work under the advice of his doctors.  In May 2004, Kodish allegedly underwent surgery and in July 2004, he was allegedly released to full duty by a medical doctor.  Kodish claims that on August 2, 2004, he was informed by Illinois Public Risk Fund ("IPRF"), the District's workers' compensation carrier/administrator, that it would not pay for the medical bills for his surgery since he did not suffer a work-related injury.  Kodish contends he told Defendant Gregory J. Sebesta ("Sebesta"), Chief of the District, that he decided that he needed to take time off to hire an attorney to deal with his medical bills issue.  According to Kodish, on August 8, 2004, he spoke with Lt. Hallik at the District, who told Kodish to take off August 9, 2004, which was a scheduled work day for Kodish.  Kodish then allegedly met with an attorney on August 9, 2004, to discuss his medical bills situation.  When Kodish returned to work on August 12, 2004, Sebesta allegedly told Kodish that he had taken a sick day for his absence on August 9, 2004, which Kodish had not earned.  Sebesta allegedly indicated that he had informed the District's Board of Trustees ("Board") of the rule violation and the Board decided to terminate Kodish's employment.  Sebesta then allegedly provided Kodish with a typed letter of resignation and had Kodish sign it, even though Kodish allegedly did not want to resign.

Kodish claims that Sebesta cajoled Kodish to cause him to sign the resignation letter.  According to Kodish, Sebesta lied to Kodish, promising Kodish that if he signed the letter, he would receive a good reference for future employment and he could maintain his health insurance.  Sebesta also allegedly told Kodish that if he did

2

not resign, Kodish would not have the benefit of unemployment insurance payments. Kodish claims that the District terminated his employment because he had previously told Sebesta that he was going to pursue a workers' compensation claim. Kodish also contends that the District terminated his employment because of Kodish's "speech in favor of unions, which he was legally entitled to do." (SA Compl. Par. 61). After Kodish's termination, Sebesta allegedly falsely informed third parties not employed by the District that Kodish no longer worked for the District, which Kodish contends harmed his reputation. Kodish includes in his second amended complaint a claim brought pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging a violation of his due process rights by the District, Sebesta, Dragovich, Sarallo, and Ventura (Count I), a First Amendment claim brought against all Defendants (Count I), a wrongful termination claim brought against the District (Count II), and a defamation claim brought against all Defendants (Count III). Defendants have moved for summary judgment on all claims. On March 6, 2008, this case was reassigned to the undersigned judge.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Section 1983 Due Process Claim (Count I)

Defendants argue that they are entitled to summary judgment in their favor on

4

the Section 1983 due process claims because Kodish has not shown that he had a protectable property interest and Kodish was not deprived of any liberty interest. For a procedural due process claim, a plaintiff must establish "that the State deprived him of a protected liberty or property interest and that the deprivation occurred without adequate due process." *Salas v. Wisconsin Dept. of Corrections*, 493 F.3d 913, 926 (7th Cir. 2007). Whether the plaintiff had "a property interest in continued employment is governed by" state law. *Id.* Kodish concedes in his response brief to Defendants' motion for summary judgment that he is not contending that he was deprived of a liberty interest and is solely basing his due process claim on an alleged deprivation of a protectable property interest. (Ans. SJ 7). Defendants argue that there is insufficient evidence that shows that Kodish has a protectable property interest in continued employment since Kodish was a probationary firefighter.

Under 70 ILCS 705/16.13b ("Section 705/16.13b"), "no officer or member of the fire department of any protection district who has held that position *for one year* shall be removed or discharged except for just cause, upon written charges specifying the complaint and the basis for the charges, and after a hearing on those charges before the board of fire commissioners, affording the officer or member an opportunity to be heard in his own defense. . . ." 70 ILCS 705/16.13b (emphasis added). The District's Wage and Benefit Policy ("Policy") states that "[a]ll new employees . . . shall be considered probationary employees until they complete a probationary period of twelve (12) months, provided that the probationary period may be extended if the employee is absent from duty for a period of more than thirty

5

(30) calendar days continuously or more than thirty (30) duty days in the aggregate."
(R SF Par. 5).

A. Whether Kodish was a Probationary Firefighter

Kodish contends that when his employment terminated, he was no longer a probationary firefighter since he had worked for the District for more than one year. A probationary firefighter does not have legitimate expectation of continued employment. *See, e.g., Lewis v. Harris*, 965 F. Supp. 1179, 1183 (C.D. Ill. 1997)(noting that "[a] line of cases since *Romanik* has held that as a general rule, probationary police officers do not have property interests in their employment"). The basis for a probationary period such as the one provided in Section 705/16.13b is to enable an employer to observe the employee and decide if the employer desires to make the employee an offer for continued employment. *See Romanik v. Board of Fire and Police Com'rs of East St. Louis*, 338 N.E.2d 397, 399 (Ill. 1975)(indicating in cases dealing with the Illinois Municipal Code "[i]t is only through probationary appointments for a reasonable period, during which firemen and policemen may be observed in the actual performance of their duties in situations of danger, that their real worth and mettle may be tested"); *Kuykendall v. Board of Educ. of Evanston Tp. High School Dist. No. 202*, 444 N.E.2d 766, 770 (Ill. App. Ct. 1982)(stating that "[t]he probationary period gives an employee the opportunity to prove himself, and it also permits an employer to evaluate the employee's performance before being committed to contractual continued service"). The Policy also specifically provides

6

that "[d]uring an employee's probationary period the employee may be suspended or terminated at the sole discretion of the employer." (R SF Par. 5).

In the instant action, it is undisputed that the District could require firefighters to serve a one-year probationary period. (R SF Par. 5). Defendants contend that a probationary firefighter is required to serve the full probationary period in order to allow supervisors to observe the probationary firefighter and assess his work performance. Kodish admits that when he was hired he was a probationary firefighter and he was bound by the Policy. (R SF Par. 3). Kodish also admits that he received a copy of the Policy, which informed him of the District's right to extend his probationary period if there was a prolonged absence. (R SF Par. 5-6). It is undisputed that Kodish was hired on June 2, 2003, and thus, his probationary period, if not extended under the Policy, should have ended on June 2, 2004. (SA Compl. Par. 8). It is also undisputed that Kodish had an extended term of absence during his originally planned probationary period. (R SF Par. 20, 23). Kodish acknowledges that he injured his knee in December 2003 and he ultimately took approximately four months off work. (SA Compl. Par. 9-12); (R SF Par. 20-23). Kodish also admits that on May 5, 2004, he was notified that due to his prolonged absence, pursuant to the Policy, his probationary period was being extended 90 days so that the District would have a full opportunity to observe his work. (R SF Par. 21). It is undisputed that Kodish's employment terminated in August 2004, which was prior to the conclusion of the extended probationary period. (R SF 21, 23, 26).

7

Kodish, however, argues that he was not a probationary firefighter in August 2004 when his employment terminated. Kodish contends that by August 2004, he had worked for the District for approximately a year and two months. However, Kodish acknowledges that he had an extended term of absence and that he had not served for the requisite probationary period under the Policy. *See, e.g., Romanik*, 338 N.E.2d at 399 (acknowledging the goal behind a probationary period, which is to ensure "a reasonable period, during which firemen and policemen may be observed in the *actual performance* of their duties")(emphasis added); *Kuykendall, No. 202*, 444 N.E.2d at 813 (indicating that for teachers the anticipated probationary period may not be sufficient if there are insufficient opportunities to see the teacher work).

### 1. Extension of Probationary Period

Kodish argues that the district could not extend the probationary period provided in Section 705/16.13b. Kodish contends that the District could not implement policies such as the Policy to abrogate rights given to employees in a statute. However, we agree with the District that the Policy should be understood to be consistent with the probationary period established in Section 705/16.13b. Kodish argues that no specific provision of Section 705/16.13b allows the District to extend the period, but neither does Section 705/16.13b prohibit extensions for reasonable purposes. As indicated above, the Illinois courts have explained that the objective behind a probationary period is to enable the employer to have sufficient

8

time to view the employee's work. *Romanik*, 338 N.E.2d at 399; *Kuykendall*, 444 N.E.2d at 813. Kodish has failed to explain why he should be allowed to take an extended absence during his probationary period and expect to skip the natural supervisory process that all other probationary employees are expected to work through. Kodish must do more than simply refer to language in isolation in Section 705/16.13b that mentions the words "one year." A statute must be read in its entirety to ascertain its meaning. The wording of the statute in Section 705/16.13b reads: ". . . who has *held that position* for one year . . ." 70 ILCS 705/16.13b (emphasis added). It does not read "after one year has elapsed from the date of hire." The purpose of the statute, therefore, is to ensure that an employee acquires certain rights once an employee has successfully held a position for one year. After management has had a chance to observe and evaluate an employee who is serving in a specific position for at least one year, and the management has decided to keep that employee, the management is prohibited under the above statute from removing or discharging the employee for other than just cause. The management is also required to state the charges in writing, giving the employee a hearing, and giving the employee an opportunity to be heard. Therefore, for the above statute to apply, Kodish was required to serve for one year in the position. The Policy ensures that employees get an opportunity to serve for one year in a specific position by extending the probationary period of employment for those employees who, for various reasons, such as medical, are unable to continue to serve in the position they are hired for. The facts are undisputed that Kodish did not hold the position for

which he was hired, for one year at the time of his employment termination due to his extended absences from work and the triggering of the extension of the probationary period under the Policy. A statute should be construed in a reasonable fashion. *See Gillespie v. Equifax Information Services, L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007)(stating that a court must "'construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant; we favor the more reasonable result'")(quoting *Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir. 2004)). Thus, Kodish has not shown that the District cannot extend the probationary period.

We also note that although Kodish argues in retrospect that the probationary period extension was unfair, as the District points out, the allowance of an extension actually assists employees that are absent during their probationary period, who have not yet shown their worth. Under Kodish's proposed interpretation of Section 705/16.13b, if a probationary employee is absent for an extended period of time and comes back to work and is not able to immediately get up to speed and perform fully and satisfactorily, the District would have to make a decision concerning the employee's continued status at the one year mark. (SJ Mem. 4). Under Kodish's argument, the District would be required to make a decision at that point even though the District might be inclined to give the employee an additional period so that the employee could hold the position as a probationary employee for one year. Thus, although Kodish now in retrospect contends that the Policy is unfair and contrary to

10

Section 705/16.13b, Kodish might have benefitted from the ability to receive an extension from the District. *See Kuykendall*, 444 N.E.2d at 770 (stating that "[t]he probationary period gives an employee the opportunity to prove himself").

Similarly, let us say that a probationary employee has not held a specific position for one year due to illness, such as is the case with Kodish, the Policy allows the District to give one full year of on the job employment in order to properly evaluate the probationary employee. Once the employee has held the position for one year, then it triggers the protections under Section 705/16.13b. Based on the foregoing, we conclude as a matter of law that Kodish has failed to establish that at the time of the termination he was not a probationary employee.

### 2. Factual Disputes

Kodish also argues that Defendants are not entitled to summary judgment since there are factual disputes that are material to the determination of whether he was a probationary firefighter when his employment terminated. For example, Kodish points out that a "Summary of Employment" for Kodish prepared by Sebesta stated: "June 2, 2004, employee earned 72 hours of accrued sick time for completion of probationary period." (P Ex. B Par. 41). However, in light of the other evidence in the record, the entry by Sebesta alone is not sufficient for a reasonable trier of fact to conclude that Kodish completed his probationary period by August 2004. For example, Kodish admits that he received a copy of the Policy and that the District

11

informed him that under the provisions of the policy his probationary period was extended. Kodish also contends that he received sick leave before his termination, which shows that he was no longer a probationary firefighter when his employment terminated. However, the undisputed evidence shows that sick leave is tied to the one-year anniversary of employment. (D Ex. E 10). There is no evidence that ties the payment of sick leave to the completion of the probationary period. Finally, Kodish himself indicated at his deposition that at the time of his termination, he was a probationary employee. (Kod. Dep. 111). Thus, there are no material disputed facts relating to the determination of Kodish's employment status and no reasonable trier of fact could conclude other than that Kodish was a probationary firefighter when his employment terminated in August 2004.

### B. Whether Kodish Was Entitled to Receive a Written Charge and a Hearing

Kodish also argues that since he had worked for the District for more than one year at the time of his termination, he was entitled to a copy of the charge against him in writing under Section 705/16.13b. However, we agree with Defendants that the provisions in Section 705/16.13b should be read to be consistent with the provisions of 65 ILCS 5/10-2.1-4, which provides that the District can give a firefighter up to a one-year probationary period. 65 ILCS 5/10-2.1-4. Thus, the right to a written charge and hearing would not be accorded to an employee who is still a probationary employee. In the situation such as in this case, where the employee is

absent for a significant period of time through no fault of the employer, and the employer extends the probationary period in order to properly assess the employee's work, the employee would need to await the protections of Section 705/16.13b until he has completed his probationary period as we have discussed earlier in this decision. Kodish has not pointed to sufficient evidence that shows that he was entitled to a written complaint or hearing prior to his termination. Thus, based on the above, as a matter of law we have found that Kodish was still a probationary employee at the time of his termination. In addition, even if we had not found as a matter of law that Kodish was still a probationary employee, no reasonable trier of fact could conclude other than that Kodish did not have a protectable property interest in continued employment. Therefore, we grant Defendants' motion for summary judgment on the procedural due process claim (Count I).

II. First Amendment Retaliation Claim (Count I)

Defendants argue that they are entitled to summary judgment on the First Amendment retaliation claim. For a First Amendment retaliation claim, a plaintiff must show that "he engaged in constitutionally protected speech and that the speech was a substantial or motivating factor in his termination." *Salas*, 493 F.3d at 925. Defendants argue that there is not sufficient evidence that shows that any speech made by Kodish that was protected by the First Amendment was a substantial or motivating factor in the decision to terminate his employment. Kodish claims that he

13

was terminated in part due to his speech in favor of unions.  Kodish admits that at one meeting he discussed his feelings about "unions in general" and was not punished in any way by Sebesta for expressing his views.  (R SF Par. 28).

### A.  Closed Session Discussion

There is evidence concerning a closed session discussion regarding Kodish's performance during his probationary period.  Kodish argues that there were discussions concerning union activities during the session, which Kodish contends shows that he was fired because of his pro-union views.  However, the closed session does not indicate any animus against unions and contains no discussion relating to Kodish's pro-union views in the manner alleged by Kodish.  The portion of the transcript of the closed session possibly making a reference to union issues consists of a few words of the 51 page transcript of the closed session.  On the other hand, the closed session transcript does indicate that there was a significant discussion of Kodish's inability to get along with other firefighters, his disregard of rules, and his disrespect of the chain of command.  (SF Par. 24).  Kodish also admits that there was discussion at the closed session about Kodish's "unwillingness to work as a member of a team."  (R SF Par. 24).  Kodish also points to a statement made by Sebesta at the closed session that Kodish caused "more uncertainty and unrest for his fellow co-workers."  (SAF Par. 29).  Kodish contends that Sebesta intended to refer to Kodish's union views.  However, considering that statement in the context of the

14

entire closed session record, it is clear that Sebesta was indicating that Kodish was causing uncertainty and unrest by his failure to follow the chain of command, his disregard of rules, and the disruptions that he caused at work. (D Ex. C 10-14, 21). For example, Sebesta indicated that Kodish "does not want to be a team player," that "[h]e'd rather operate as an individual," but that the firemen at the District "ha[s] to have structure." (D Ex. C 10-11). Kodish also points out that Sebesta stated that Kodish "brings the organization down" and for Kodish there was a "constant challenge of authority." (SAF Par. 33). However, it is clear that such statements refer to Sebesta's extensive references to Kodish's inability to get along with other firefighters, to be a team player, or follow rules or the chain of command. (D Ex. C 10-14, 29, 36-37). For example, Kodish admits that on November 14, 2003, Sebesta needed to be called to the station to intervene in a confrontation between Kodish and another firefighter. (R SF Par. 9). Kodish also admits that Sebesta warned both Kodish and the other firefighter that if their conduct continued, their "employment could be in jeopardy." (R SF Par. 9). Kodish also argues that a statement by Sebesta that Kodish "mess[es] with the system [there]," shows that Sebesta held anti-union views. (SAF Par. 34). However, the record of the closed session clearly shows that the statement by Sebesta is a reference to Kodish's failure to follow the rules or command structure. (D Ex. C 11-12). Thus, no reasonable trier of fact could conclude that Sebesta exhibited anti-union views at the closed session or that Sebesta terminated Kodish's employment because of Kodish's alleged pro-union views.

15

B.  Other Alleged Statements Made by Sebesta

Kodish contends that Sebesta also made other statements that show that Sebesta had an animus against unions.  Kodish asserts that Sebesta indicated that Kodish was "very much pushing for a union."  (SAF Par. 19).  However, such a statement does not indicate whether Sebesta liked or disliked the idea of Kodish "pushing for a union."  (SAF Par. 19).  Kodish also claims in his affidavit that there was a "conversation in which Kodish indicated his support for unions and the [Sebesta] responded that he did not like unions. . . ."  (SAF Par. 20).  However, Sebesta testified unambiguously at his deposition that he "had no problems with unions."  (Seb. Dep. 71).  Kodish also contends that Sebesta told him that "you have to live or die by the rules."  (SAF Par. 20).  However, Kodish fails to show that such a statement in any way indicates an animus against unions.  Kodish argues that the vague statements allegedly made by Sebesta "show[] a subtle but clear message that Kodish's termination was motivated by Kodish's desire to unionize."  (Ans. SJ 11).  However, we do not agree that the evidence concerning Sebesta's alleged statements could cause a reasonable trier of fact to infer that Sebesta's statements indicated he was going to terminate Kodish due to his pro-union views.  Kodish, in asking the court to interpret certain evidence as having "subtle" meanings, is asking the court to make unreasonable inferences.  Kodish cannot prevail at trial by asking the trier of fact to make unreasonable inferences or speculate as to certain facts.  *See Springer v.*

16

*Durflinger*, 2008 WL 540220, at *5 (7th Cir. 2008)(stating that "summary judgment 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events'")(quoting in part *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)). Kodish also contends that Sebesta did not believe that union organization should be discussed in the firehouse. (SAF Par. 23). However, such a statement does not show an animus against unions. Kodish also argues that evidence of a conversation between Sebesta and Clint Johnson ("Johnson") shows that Sebesta exhibited an animus against Kodish because of his pro-union views. (SAF Par. 27). Johnson during his deposition did not even have an independent recollection of such a conversation and indicated that it would have no impact on hiring decisions. (Johnson Dep. 37-38). The above evidence does not indicate any animus against unions by Sebesta. Nor is there any indication that references to union activities allegedly made by Sebesta to third parties were sufficient to indicate an animus against unions. Kodish also points to the summary of employment record prepared by Sebesta. (SAF Par. 24-26). However, Kodish again fails to show how any notations on the document indicate animus against unions. In addition, even when considering all of the evidence in its entirety pointed to by Kodish on this issue, there is insufficient evidence for a reasonable trier of fact to conclude that Kodish's alleged pro-union views were a substantial or motivating factor in the termination of Kodish's employment.

We also note that even if Kodish had pointed to sufficient evidence that shows

17

that his pro-union speech was a substantial or motivating factor in his termination, the evidence is such that no reasonable trier of fact could conclude other than that the District would have discharged Kodish regardless of his alleged pro-union views. There is ample evidence in the record concerning Kodish's poor work performance and the negative impact that he had on the workplace. (SF Par. 8-19). For example, as indicated above, Sebesta had to be called to the station on one occasion to break up a confrontation between Kodish and another firefighter. (R SF Par. 9). Another example is that Kodish admits that on February 26, 2004, Captain James Vejvoda gave Kodish an oral reprimand because Kodish failed to comply with a District rule that required him to let a vehicle engine cool down for 2 to 3 minutes before shutting down the engine. (R SF Par. 18). Kodish also admits that in January 2004, EMS Coordinator Patrick Arends ("Arends") wrote a memo to Sebesta regarding deficiencies in Kodish's patient care reports and that in February 2004, Arends wrote a memo to Assistant Chief Ralph DeLuca that addressed various deficiencies in the run reports that were being prepared by Kodish. (R SF Par. 14, 16). Therefore, based on the above, we grant Defendants' motion for summary judgment on the First Amendment claims (Count I).

III. Remaining State Law Claims (Counts II and III)

Since we have found in Defendants' favor on both of the federal-based claims in Count I, we must consider whether it is appropriate to proceed in this case with the

18

remaining state law claims. Kodish asserts in his second amended complaint that this court has supplemental jurisdiction over the state law claims and Kodish does not assert that there is diversity subject matter jurisdiction in this case. (SA Compl. Par. 6). In regard to the remaining state claims, the Seventh Circuit has stated that when a court dismisses a federal claim and the sole basis for invoking federal jurisdiction has become nonexistent, although there is no presumption that the state law claims should be dismissed, the court generally should not exercise supplemental jurisdiction over remaining state law claims. *See Sanchez & Daniels v. Koresko*, 503 F.3d 610, 615 (7th Cir. 2007)(stating that "[a]fter a court has disposed of all the claims that gave it jurisdiction in the first instance, in assessing whether to retain jurisdiction over any remaining claims the court must choose the course that 'best serves the principles of economy, convenience, fairness and comity which underlie the pendent jurisdiction doctrine'")(quoting in part *Centres, Inc. v. Town of Brookfield,* 148 F.3d 699, 704 (7th Cir. 1998)); *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003)(stating that if there is a dismissal of the original jurisdiction claim and only a supplemental jurisdiction claim remains, "the sole basis for invoking federal jurisdiction is nonexistent and the federal courts should not exercise supplemental jurisdiction over his remaining state law claims"); *Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1251 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts). In addition, under 28 U.S.C. § 1367(c)(3), a federal district court may dismiss a plaintiff's supplemental state law

claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In exercising discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.,* 32 F.3d 273, 276 (7th Cir. 1994). In the instant action, after considering the above factors, we decline to exercise supplemental jurisdiction over the remaining state law claims. Therefore, we dismiss the state law claims in Counts II and III without prejudice.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment on the claims in Count I and dismiss without prejudice the state law claims in Counts II and III.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 26, 2008